IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| STEPHEN WEIHROUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-119 |
| | ) | |
| CORRECTIONAL CORPORATION OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility in Alamo, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.  SCREENING OF THE AMENDED COMPLAINT**

   **A.  BACKGROUND**

In his complaint, Plaintiff names Correctional Corporation of America, Warden Medlin, Wheeler Correctional Facility, Georgia Composite Medical Board, and P.A. Fry as defendants. (Doc. no. 1, pp. 1, 4.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On January 26, 2013, Plaintiff fell on his head as a result of water on his dorm room floor from a leaky roof. (Id. at 5.)  The fall caused injuries to Plaintiff's head, neck, and back, and

Plaintiff subsequently lay on the wet floor in his dorm for thirty minutes waiting on a stretcher. (Id.) Plaintiff was taken to the medical department at the prison where the nurse told Plaintiff that he was not hurt. (Id.) Officers then placed Plaintiff in a cell in the medical department where he remained from January 26, 2013 to January 30, 2013. (Id.) On January 30, 2013, P.A. Fry examined Plaintiff and told the prison to call an ambulance. (Id.) Plaintiff was rushed to Fairview Park Hospital in Dublin, Georgia where he received a cat scan on his head, neck, chest, and spine. (Id.) The doctor wanted to admit Plaintiff to the hospital but the prison refused. (Id.) The doctor also stated that Plaintiff needed to see a neurologist. (Id.)

Subsequently, Dr. Stephen Hill, a neurologist, examined Plaintiff on three occasions and told Plaintiff that he had nerve damage and needed surgery as well as physical therapy. (Id.) The prison has not provided Plaintiff with this treatment. (Id.) Plaintiff is in severe pain, suffers day and night, and cannot sleep and has also received an improper medical bill from the hospital. (Id.) Plaintiff requests to be compensated for the pain and suffering he has endured in the amount of three million dollars. (Id. at 6.) Plaintiff also requests to be seen by a neurologist and to have his outstanding medical bill paid and removed from his credit report. (Id.)

As to the prison grievance procedure, Plaintiff states he did not appeal his grievance to the highest administrative level because he never received an answer at the institutional level. (Id. at 4.)

### B. DISCUSSION

Plaintiff's amended complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008); Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available"

whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Because of the date of the incident that Plaintiff alleges, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. An inmate may file a grievance "about any condition, policy, procedure, or action or lack thereof that affects the offender personally." SOP IIB05-0001 § VI(B)(1). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. SOP IIB05-0001 § VI(D)(1)-(5). Once the Counselor gives the grievances to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. SOP IIB05-0001 § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. SOP IIB05-0001 § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation, the Grievance Coordinator will appoint a staff member to investigate the complaint. SOP IIB05-0001 § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or their designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. SOP IIB05-0001 § VI(D)(7). The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to

the Office of the Commissioner; the Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to respond. SOP IIB05-0001 § VI(E). If the time allowed for the grievance response has expired and the inmate has not received a response, the inmate may either (1) file a Central Office Appeal or (2) wait until he receives a response to the grievance to file a Central Office Appeal. Id. The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id.

     Here, Plaintiff admits that he did not exhaust his administrative remedies prior to the commencement of this case, as is required under the PLRA, because he filed his complaint without having appealed the denial of his formal grievance to the Office of the Commissioner. (See doc. no. 1, p. 4; SOP IIB05-0001 § VI.) In order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is immaterial that Plaintiff did not receive a response from the Warden because that simply entitles him to appeal to the Office of the Commissioner which he failed to do. See SOP IIB05-0001 § VI(E). Therefore, Plaintiff's complaint should be dismissed without prejudice.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of March, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA